IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 02 2018
JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

| | | |
|---|---|---|
| JOHN WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:17cv00021 |
| v. | ) | |
| | ) | |
| FEDERAL EMERGENCY, | ) | By: Michael F. Urbanski |
| MANAGEMENT AGENCY | ) | Chief United States District Judge |
| (FEMA), | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This pro se Title VII action was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("Report & Recommendation"), ECF No. 19, on November 21, 2017, recommending that the court grant defendant Federal Emergency Management Agency's ("FEMA") motion to dismiss without prejudice plaintiff John White's complaint for lack of jurisdiction. White has filed objections to the report, and this matter is now ripe for the court's consideration.

### I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."

United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (internal quotations omitted). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010), cert. denied, 131 S. Ct. 610 (2010); see also Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of

generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

539 F. Supp. 2d at 846 (quoting Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks"; instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

FEMA raised three arguments in its Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. ECF No. 9. First, FEMA argued that "any Title VII claims related to the revocation of White's security clearance and consequent removal from federal service are foreclosed from judicial review." Def.'s Mem. Law Supp. Mot. Dismiss & Mot. Summ. J. ("MTD Br."), ECF No. 10, at 2. Second, FEMA contended that White "failed to administratively exhaust the vast majority of any potential claims he might assert based on his allegations." Id. at 3. Third, FEMA claimed that White's claims "relying upon actions of [FEMA] that occurred prior to February 2011 are barred by res judicata." Id.

The magistrate judge rejected FEMA's exhaustion arguments. White filed an administrative complaint in which "he alleged that FEMA terminated his employment because his security clearance was revoked, and he identified race discrimination and retaliation for filing complaints in June and October 2013 as the grounds for his termination." Report & Recommendation 9. After the EEOC issued a right-to-sue letter, "White timely brought suit in this Court." Id. Further, the magistrate judge found that White's other allegations "appear to be offered as support for his properly exhausted claims of race discrimination and retaliation related to his firing in 2016 rather than separate claims." Id. at 10.

The magistrate judge then agreed with FEMA and found that the court lacks subject matter jurisdiction "over White's Title VII claims because adjudicating them would require the Court to review [FEMA's] decision to revoke his security clearance." Id. White levies two objections: (1) his job description did not require security clearance, and (2) the

magistrate judge's legal analysis into subject matter jurisdiction.[1] See Pl.'s Mot. Reconsideration ("Pl.'s Obj."), ECF No. 20, at 2–8. The court addresses each objection in turn.

## A. Legal Standard

Both of White's objections—that his position did not require security clearance and that the court has jurisdiction to hear Title VII claims even if security clearance were involved—implicate the court's subject matter jurisdiction over his Complaint. Accordingly, the court first details the legal standard applicable.

A Rule 12(b)(1) motion challenges that court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005); United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). A federal court's jurisdiction is confined to the cases that, within the bounds of the Constitution, Congress has allowed the court to hear. See Bowles v. Russell, 551 U.S. 205, 212 (2007). If a federal court determines it lacks subject matter jurisdiction over a complaint, "the action must be dismissed." Vuyyuru, 555 F.3d at 347. In cases originating in federal court, a plaintiff bears the burden of establishing jurisdiction. See Robb Evans & Assocs., LLC v. Holibaugh, 609 F.3d 359, 362 (4th Cir. 2010).

Challenges to subject matter jurisdiction take two forms: facial and factual attacks. 2 Moore's Federal Practice ¶ 12.30[4]; see also Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). A facial attack challenges the sufficiency of a complaint's jurisdictional allegations.

[1] White recycles arguments about administrative exhaustion. See Pl's Obj. 9–20. The magistrate judge found in White's favor on exhaustion, however, and FEMA has not lodged any objections to this finding. Similarly, White recycles arguments about res judicata, see id. 20–21, but the magistrate judge did not address this issue, see Report & Recommendation 15 n.6.

Kerns, 585, F.3d at 192. By contrast, a factual attack "challenges the factual predicate of subject matter jurisdiction." Id. In adjudicating a factual attack, "'[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." Id. (alteration in original) (emphasis omitted) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). The court then may resolve disputed issues of fact underpinning the exercise of subject matter jurisdiction. Id.

**B. Security Clearance**

White first appears to object to the magistrate judge's finding "that at the time White was terminated, his job required a security clearance." Report & Recommendation 14; see Pl.'s Obj. 2–6. From what the court can gather, White's argument has three components: (1) his job description after the 2011 settlement did not require security clearance, see Pl.'s Ob. 2; (2) the 2014 change of job description was not legitimate, see id. 2, 5; and (3) Agent Gary Maratta, a government official, provided false testimony in his declaration in this case, see id. 5–6.

The magistrate judge already considered and rejected the first two of these components. See Report & Recommendation 13–14; cf. Pl.'s Mot. Deny Def.'s Mot. Dismiss Mot. Summ. J. & Propose Show Cause Order Sanctions Failure Complete EEOC Investigation & Mot. Proceed ("MTD Opp."), ECF No. 12, at 6–7. A plaintiff, unsatisfied by the findings and recommendation of the magistrate judge, cannot seek re-argument of his case in the guise of an objection. Veney, 539 F. Supp. 2d at 844. Notably, White fails to identify any specific error in the magistrate judge's report related to his security clearance.

This general objection does not warrant de novo review. Id. at 844–46; see also Camper, 2009 WL 9044111, at *2.

In any event, the magistrate judge correctly determined that "even viewing the record in White's favor, the Court cannot find that he has met his burden to establish that his position did not require a security clearance." Report & Recommendation 14. In particular, White's post-settlement job description "still also classified White's position as one of critical sensitivity." Id. at 13; see also MTD Opp. Ex. 33, at 1. As FEMA noted in its reply brief, and as White has failed to rebut, "[a]t least two separate [FEMA] policies provide that employees with a Critical job sensitivity," including White's 2011 job description, "are required to maintain Top Secret security clearances." Def.'s Reply Br. Supp. Def.'s Mot. Dismiss ("MTD Reply"), ECF No. 13, at 4; see also id. Ex. 3, at 2 (FEMA Instruction No. 1220.1, showing that positions designated "Critical Sensitive" require "Top Secret" security clearance); id. Ex. 4, at 22–23, 39–40, 44 (DHS Instruction Handbook 121-01-007, showing same). These FEMA policies confirm that White's post-settlement job description required top secret security clearance.[2]

Further, and dispositive to the issue, White has not rebutted "the evidence before the Court show[ing] that at the time White was terminated, his job required a security clearance." Report & Recommendation 14. The magistrate judge correctly relied upon a sworn declaration from Donna Bennett, White's frontline supervisor, who stated that on January 14, 2016, while on administrative leave, White was realigned to a new position that required

[2] White muses that "who is to say that Mr. Cormack did or did not intentionally check this box of 'Critical'?" Pl.'s Obj. 2. But White's pure conjecture is woefully insufficient to demonstrate that White's position did not require top secret clearance. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (holding "[c]onclusory or speculative allegations do not suffice" to prove a party's case").

top secret SCI clearance. MTD Opp. Ex. H ¶¶ 4–10. Further, Bennett attested that if White had maintained top secret clearance, "his clearance would have been upgraded to TS SCI." Id. ¶ 11. This is the position from which White was terminated. White points to nothing in the record even intimating that Bennett's declaration is false. Accordingly, the court agrees with the magistrate judge that White was terminated from a position that required top secret clearance, which White no longer possessed.[3]

## C. Justiciability

White next takes issue with the magistrate judge's conclusion that Department of the Navy v. Egan, 484 U.S. 518 (1988), and its progeny divest the court of subject matter jurisdiction to hear suits regarding decisions to revoke security clearance. In particular, White points the court to Rattigan v. Holder, 689 F.3d 764 (D.C. Cir. 2012), a decision from which White quotes at length in support of his argument that his claims are justiciable. Pl.'s Obj. 6–7. White also raises several EEOC decisions that he claims supports his legal position. Id. at 7–8. The court finds that White has made this objection "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622. Further, White's objection does not merely restate arguments he already made before the magistrate judge. Cf. Veney, 539 F. Supp. 2d at 846. Accordingly, the court reviews the magistrate judge's findings de novo.

[3] Finally, White claims that "Maratta, a sworn law officer, provided false testimony in his declaration." Pl.'s Obj. 5. At the threshold, none of the court's findings on the security requirements of White's position were based on Maratta. In any event, White fails to tether his blanket claims of perjury to any facts and disregards his base speculation. See Thompson, 312 F.3d at 649

### 1. Analysis

FEMA argues that Department of the Navy v. Egan, 484 U.S. 518 (1988), precludes the court from examining "any Title VII claims related to the revocation of White's security clearance." MTD Br. 2. Egan first determined that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." Egan, 484 U.S. at 529. The Supreme Court found it unreasonable "for an outside nonexpert body," like a court, "to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative [security determination] with confidence." Id. Accordingly, the Supreme Court held that courts should not intrude upon an agency's determination on security clearance "unless Congress specifically has provided otherwise." Id. at 530.

While Egan did not consider security clearance in the Title VII context, the Fourth Circuit has. In Becerra v. Dalton, Becerra brought a Title VII claim against the United States Navy, claiming that "the Navy discriminated against him on the basis of sex and national origin" and "retaliated against him after he filed his EEO complaints by revoking his security clearance." 94 F.3d 145, 146 (4th Cir. 1996). After Becerra filed an EEOC complaint, "the Navy began a security investigation on Becerra based on confidential information that Becerra claims the Navy knew or should have known was false." Id. at 148. His security clearance was suspended, and he was later terminated based on lack of clearance. Id.

After reviewing Egan, the Fourth Circuit considered Guillot v. Garrett, 970 F.2d 1320 (4th Cir. 1992), which held that "unless Congress specifically has provided otherwise,

the courts will not intrude upon the President's authority to grant or deny access to national security information." Becerra, 94 F.3d at 148–49 (quoting Guillot, 970 F.2d at 1324). With respect to the Rehabilitation Act and Title VII, the Guillot court concluded:

> [None] of these provisions otherwise evidence the kind of unmistakable expression of purpose that the Supreme Court by necessary implication suggested in Egan would be required to support a conclusion that Congress intended to subject the Executive's security clearance determinations to scrutiny for violations of either section 501 of the Rehabilitation Act of 1973 or Title VII itself.

Id. at 149 (quoting Guillot, 970 F.2d at 1325).

Becerra tried to show justiciability "by arguing that no court has addressed the issue of whether the instigation of the investigation into the security clearance as a form of retaliation is judicially reviewable." Id. The Becerra court rejected Becerra's position as a "distinction . . . without a difference," finding that

> [t]he question of whether the Navy had sufficient reasons to investigate the plaintiff as a potential security risk goes to the very heart of the "protection of classified information [that] must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it."

Id. (second alteration in original) (quoting Egan, 484 U.S. at 529).

White ultimately makes the same argument that the Fourth Circuit rejected in Becerra. White claims that his security clearance was not upgraded because of "the false allegations of weapons, hacking e-mail servers, forging signatures for tuition, creating a hostile work environment, and 'playing the race card,'" and his security clearance was only "revoked[] after the Plaintiff blew the whistle on the Defendant(s) [sic] violations of federal laws and regulation." Pl.'s Obj. 8.

White's argument distills down to the claim that his security clearance was revoked because of his whistleblowing and false allegations. But making that ultimate determination would require the court to examine "whether [FEMA] had sufficient had sufficient reasons to investigate [White] as a potential security risk"—precisely the analysis that Egan and Becerra forbid. Becerra, 94 F.3d at 149; see also Kruise v. Fanning, 214 F. Supp. 3d 520, 525 (E.D. Va. 2016) ("[T]he Fourth Circuit has specifically held that Egan bars judicial review of Title VII and Rehabilitation Act claims arising out of security clearance decisions."). As the magistrate judge correctly held, "[t]he merits of that decision are not subject to review by this Court." Report & Recommendation 15; see also Spencer v. Carter, Civ. No. PX 16-161, 2016 WL 4240376, at *3 (D. Md. Aug. 11, 2016) ("B[e]cerra instructs this Court that it is without jurisdiction to review challenges to Defendants' decision to revoke Plaintiff's security clearance even where, as here, it is based on alleged knowing falsehoods and claimed retaliation for filing EEO complaints."), aff'd sub nom, Spencer v. Mattis, 686 F. App'x 228 (4th Cir. 2017).

### 2. Rattigan

White attempts to escape the magistrate judge's conclusion by appealing to Rattigan v. Holder, 689 F.3d 764 (D.C. Cir. 2012). White quotes a wide swath of Rattigan without explaining its import, see Pl.'s Obj. 6–7, but the court can glean from the quote what White is attempting to show.[4] Rattigan, a black male of Jamaican descent who converted to Islam, was an FBI employee assigned to the Office of the Legal Attaché at the United States

[4] The first sentence of the block quote is not found in Rattigan. Instead, White appears to quote the introductory paragraph of a Law360 article on Rattinger, with minor punctuation and capitalization changes. Compare Pl.'s Obj. 6 with Abigail Rubenstein, D.C. Circ. Limits Gov't Title VII Liability for Security Probes, Law360 (July 10, 2013, 9:33 PM), https://www.law360.com/articles/358450/dc-circ-limits-gov-t-title-vii-liability-for-security-probes.

Embassy in Riyadh, Saudi Arabia. Rattigan, 689 F.3d at 765. Rattigan was the FBI's primary liaison to the Saudi intelligence service. Id. While in Riyadh, Rattigan made several complaints of race- and national origin-based discrimination. Id. Around the same time, an FBI official became concerned that Rattigan's behavior suggested that he "might be inappropriately under the influence of his Saudi counterparts." Id. at 766 (internal quotations omitted). That official voiced his concerns to the FBI's Security Division, which opened an investigation into Rattigan's security clearance. Id. The Security division concluded that the concerns "lack[ed] corroboration and [were] unfounded," and Rattigan retained his security clearance. Id. (alterations in original). Rattigan filed a Title VII suit that claimed, among other things, that the decision to refer the concerns to the Security Division was retaliatory. Id.

The D.C. Circuit held that, for the FBI, "Egan's bar on judicial review extends only to security clearance-related decisions made by the Security Division itself [that is, the division responsible for security clearance] and not to decisions by other FBI employees to report their concerns to the Division." Id. at 767. The D.C. Circuit concluded that "Title VII claims based on knowingly false reporting present no serious risk of chill," and "claims of knowingly false security reports or referrals can coexist with Egan." Id. at 770.

White's appeal to Rattigan might hold water if Rattigan were controlling on the court. Unfortunately for White, D.C. Circuit cases do not bind the court. Instead, Becerra, which is binding on the court, is on all fours with the facts White alleges. White ultimately claims that the "instigation of the investigation into [his] security clearance" was "a form of retaliation."

See Becerra. 94 F.3d at 149 (emphasis omitted). Becerra unequivocally renders White's claims nonjusticiable.

Rattigan suffers from another infirmity: It is difficult to reconcile Rattigan with Egan. As the dissent in Rattigan recognized, Egan "reasoned that 'the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.'" Rattigan, 689 F.3d at 773 (Kavanaugh, J., dissenting) (quoting Egan, 484 U.S. at 529). Egan concluded that "it is not reasonably possible for an outside nonexpert body [such as a court] to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative production with confidence." Indeed, the dissent in Egan makes that point clear, bemoaning that the majority opinion "den[ies] any meaningful hearing to employees . . . who are discharged on national security grounds under provisions other than § 7532."[5] Egan, 484 U.S. at 535 (White, J., dissenting). As Judge Kavanaugh noted in dissent in Rattigan, "Nothing in Egan's language suggests that the Supreme Court was only barring review of the security clearance actions of 'appropriately trained' employees. Rattigan, 689 F.3d at 775 (Kavanaugh, J., dissenting) (quoting Rattigan, 689 F.3d at 767 (majority opinion)). The court agrees with Kruise that "the Rattigan rule is based on an unconvincing cherry-picking of the Egan decision that is at odds with Egan itself as well as the Becerra decision."[6] Kruise, 214 F. Supp. 3d at 527.

---

[5] Section 7532 provides most federal employees suspended or terminated for security reasons an opportunity for "a hearing, at the request of the employee, by an agency duly constituted for this purpose." 5 U.S.C. § 7532 (c)(C).

[6] White also points the court to two EEOC appeals that he claims support the court's jurisdiction. See Pl.'s Obj. 7. But nothing in Egan or Becerra suggests that the fact that the EEOC has heard a case vitiates Egan's and Becerra's holdings that "race discrimination claims that require courts to evaluate the merits of security clearance determinations are non-justiciable." Ames v. Johnson, 121 F. Supp. 3d 126, 127 (D.D.C. 2015).

## III.

The court has reviewed the magistrate judge's report and White's objections to the report, and, in so doing, made a de novo determination of the portion of the report to which White properly objected. The court finds that the magistrate judge was correct in concluding that White's Title VII claims are nonjusticiable because they require the court to pass judgment upon FEMA's revocation of White's security clearance. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 02-01-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge